CITIZENS' NATIONAL BANK *v.* UNION INDEMNITY COMPANY.

Opinion delivered April 23, 1923.

INSURANCE—BURGLAR POLICY—FORCIBLE ENTRY.—Conceding without deciding that ledgers, binders, ledger guides and ledger leaves are covered by a burglar policy securing insured against loss of "money and securities," *held* where the policy provided against liability, in the event the safe is not locked by the time lock, unless "forcible entry is made therein by the use of tools, explosives, chemicals or electricity directly thereupon," and the entry into the safe is shown to have been made by one who knew the combination, no liability is shown.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*L. E. Sawyer,* for appellant.

Appellee was liable under its policy provision, general agreement C, which is broad enough to cover damage by abstraction of ledgers from locked book vault by employer without authority.

*Buzbee, Pugh & Harrison* and *A. S. Buzbee,* for appellee.

Books and leaves of ledgers lost were not kept in vault, as required by provisions of policy, and no recovery can be had, as the court correctly found leaves of ledger not covered. 3 Ves. Jr. 310; 75 S. W. 319. Policy form prepared by American Bankers' Association, and should be construed most strongly against the bank. No such entry of vault as fixes liability against appellee. 142 Pac. (Okla.) 312, 120 S. W. 301, 121 Pac. (Cal.) 321; 113 N. Y. 476; 183 N. Y. 785. No damages caused by entry within meaning of policy. 96 S. W.

(Ky.) 450. No proof that employee of bank not implicated in loss, and there can be no recovery for restoring books to original condition.

WOOD, J.   The appellant instituted this action against the appellee to recover for loss of a number of its ledgers, binders, ledger guides and ledger leaves under a burglary policy which, among other things, provides:

"General Agreement A.

"For all loss of money and securities from within any safe or vault into which insurance under this policy applies, caused by a felonious abstraction of the same during the day or night by any person or persons, or any accomplice thereof, into the safe or vault, while duly closed and locked, located in the banking-room described in the schedule, and hereinafter called the premises, or while located elsewhere, after removal from within the premises by thieves, or robbers, or their accomplice. In the event that the said safe, or safes or vault, are not locked by time-lock, the company shall not be liable for loss of said money and securities feloniously abstracted therefrom, unless said forcible entry is made therein by the use of tools, explosives, chemicals, or electricity directly thereupon."

"General Agreement C.

"For all loss by damage to said money and securities, and to said safe or safes or vault described in said schedule, or to the premises, or to the office furniture and fixtures therein, caused by such person or persons while making or attempting to make such entry into said premises, vault, safe or safes."

The appellant alleged that, while the policy was in force, certain persons referred to in general agreement A, while attempting to make an entry by force, as described in said agreement, did damage the office, furniture and fixtures of appellant located on its premises by abstracting the ledgers, etc., above mentioned, which

were all in safe with combination, each safe being locked. The appellant laid its damage at $1,582.51, for which it prayed judgment.

The appellee admitted the contract, but denied the other allegations of the complaint, and set up that if such acts did occur they were caused by the act of appellant's employee; that the loss, if any, was not within special agreement No. 10 of the policy, which provides, among other things, that "the company shall not be liable under general agreement A for any loss from within a round or screw-door chest, unless the loss is effected from a compartment of such safe which is protected by the round or screw-door, nor for any loss from any safe containing a steel burglar-proof chest, unless the loss is effected from within the said chest, after both forcible entry into the safe and forcible entry into said chest."

By consent of the parties, the cause was submitted to the court upon an agreed statement of facts, which it is unnecessary to set out in detail, but from which it appears that on the night of June 28, 1921, the doors and windows to the bank were closed and locked. The employees of the bank having keys to the outer doors did not enter the bank that night, nor assist any one else to do so. The journal ledger was left in an unlocked drawer in a teller's cage, and all the other articles mentioned were left in what is called a "book vault," which is kept closed and locked by a combination, not a time-lock. One Hiram Shaw, a former employee of the bank, who had charge of certain of the lost ledgers while in the bank's employ, had a key to the rear door of the bank, and also knew the combination to the book vault. On the morning of the 29th of June, 1921, the articles mentioned were missing. The vault containing the books which had been locked the night before was open. The bank was entered by some one having a key to the door of the bank, and the book vault was entered by some one who was acquainted with its combination. There was no evidence of violence or of the use of tools or explo-

sives about any of the windows or doors of the bank or the door of the vault. After the loss of the articles it was discovered that there was a shortage in the accounts of the appellant, on account of which the appellee paid to the appellant $25,000 under a fidelity bond which the appellant carried with the appellee. After this shortage was discovered, Shaw was indicted and convicted of embezzlement. Shaw and three employees of the bank were the only ones with keys to the bank, and they knew the combination of the book vault from which the articles were taken.

The trial court found that the appellant suffered no loss by damage to its furniture and fixtures caused by some person or persons while making a forcible entry into its premises, safe or vaults; that the only loss shown by the evidence was caused by the felonious abstraction of the books, and such loss is not included in the contract sued on. The court declared, as a matter of law, that the appellee was not liable, and entered judgment in its favor, from which is this appeal.

The judgment of the court is correct. Conceding, without deciding, that the articles mentioned in the complaint are covered by the contract of insurance, there is nevertheless no liability under the policy. The contract of insurance provides: "In the event that said safe or safes or vault are not locked by time-lock, the company shall not be liable for loss of said money and securities feloniously abstracted therefrom, unless said forcible entry is made therein by the use of tools, explosives, chemicals, or electricity directly thereupon." And further: "For loss by damage * * * to the office *furniture and fixtures therein,* caused by such person or persons while making or attempting to make *such entry into said premises,* vault, safe, or safes." The words "such entry" last used refer to the "entry" of the preceding paragraph A, "forcible entry by the use of" tools, explosives, etc.

The policy, as shown by the testimony of the president of the appellant, was the standard form of burglar policies as prepared by a committee of the American Bankers' Association. The policy must be considered as a whole. The undisputed testimony shows that the book vault in which the articles mentioned were contained was not locked by a time-lock, but by a combination lock. Therefore it is obvious, when the above provisions are considered together, that the parties to the contract contemplated that the appellee should not be liable for the loss of the articles mentioned in the complaint unless the book vault containing them was entered with "tools, explosives, chemicals, or electricity directly thereupon." The entry was by use of a key in the hands of one who knew the combination to the book vault. Therefore there was no "forcible entry" within the terms of the policy, which evidently contemplated an entry by the use of tools or explosives. A key to the premises is not a burglar's tool, within the meaning of the language of the policy. This language clearly meant such tools as would effect a forcible entry to the bank, and such tools or explosives as would effect a forcible entry into the vault. Even if a key could be considered a burglar's tool in effecting an entry into the bank, still there was no use of burglars' tools or explosives in entering the book vault. The above language of the contract is unambiguous. Therefore there is no liability under the express terms of the policy. *Maryland Casualty Co.* v. *Ballard County Bank,* 120 S. W. 301; *First National Bank* v. *Maryland Casualty Co.,* 121 Pac. 321; *Brill* v. *Metro. Surety Co.,* 113 N. Y. Supp. 476; *Feinstein* v. *Mass. Bonding Co.,* 183 N. Y. Supp. 785.

The judgment is affirmed.