[Civ. No. 647. Fifth Dist. June 1, 1967.]

MARGARET WATKINS, Plaintiff and Appellant, v. DONNA MAE OHMAN et al., Defendants and Respondents.

502

Ara Ohanesian for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Coyle & Best and Robert E. Coyle for Defendants and Respondents.

CONLEY, P. J.—The plaintiff, who as a guest in an automobile, was injured on April 27, 1964, when the car in which she was sitting was struck by another vehicle co-owned by Eugene Ohman and his wife, Donna Mae Ohman, and driven by her, appeals from a verdict adverse to her claim. There is no suggestion that there was contributory negligence, and the evidence shows that Mrs. Watkins was injured as a result of the collision, notwithstanding a sharp conflict as to whether the injury was of major proportions or trifling. It may be deduced accordingly, from an examination of the record, that the jury based its verdict on the theory that the driver of the defendants' car was free from negligence.

 It is an inescapable conclusion that liability for torts of this character is essentially welded to a theory of blame; here the defendant driver, while operating an automobile on the public highways of the City of Fresno, was

required to act as a reasonably prudent person under the same or similar circumstances; and it was for the jury to determine whether or not Mrs. Ohman so acted. If she did—and that is the jury's implied finding—there was no liability on the part of the defendants, and they were entitled to a verdict. (Prosser, Law of Torts, (3d ed. 1964), pp. 16-23 and 143-146; 2 Harper and James, The Law of Torts, pp. 744-758.)

Plaintiff was riding in the back seat of a Chrysler; the car, going in a northerly direction, properly halted at a stop sign at the intersection of Chestnut Avenue and Tulare Street; the defendant, Donna Mae Ohman, was driving a 1956 Ford car, also in a northerly direction on Chestnut Avenue behind the Chrysler. She, too, stopped at the intersection some two to four feet to the rear of the Chrysler. In a matter of approximately two minutes the Ohman car hit the Chrysler and pushed it into the intersection. Defendant testified that the casualty was caused by a whirlwind, which blew into her open window and hit her in the face, getting sand in her eyes, and that her car, the motor of which had been idling slowly, must have moved forward at a speed of about five miles an hour; her foot had been on the brake before the dust hit her face, the car being in gear but stopped by reason of the brake.

The plaintiff testified that she was thrown backward and then forward by the impact, that the left side of her body struck the front seat, and that she immediately felt a burning in the low back area. She called her physician, Dr. C. C. Tan, an orthopedic specialist, the next day. He was out of town and she was sent to Dr. Papazian, who had her X-rayed at the Fresno Community Hospital. He prescribed pain tablets. She had previously undergone a laminectomy and spinal fusion of her lower back on March 22, 1963, from which she had partially recovered. After the collision, appellant said that she spent part of each day in bed for two or three weeks with headaches, a tight feeling and pain in the neck and upper back, and numbness of the legs. She received treatment from Dr. Tan, after his return to Fresno, until May, 1965. The bill for his services was stipulated to be $680, the Community Hospital X-ray bill $30, and Dr. Papazian's bill $5; it was also stipulated that a total amount of $729.86 was reasonable compensation for the aid given her and could be introduced into evidence, although liability was denied.

Respondent Eugene Ohman's liability, as co-owner of the motor vehicle, was wholly contingent upon the establish-

ment of fault on the part of the driver, Donna Mae Ohman; he had no independent responsibility.

Appellant's basic contention is that the respondent driver failed to conduct herself, and to control her vehicle, in accordance with the required standard of care.

The defendant Donna Mae Ohman testified as follows: at the time of the accident, she was going in a northerly direction to pick up a woman friend, who was a fellow worker at a store, intending to have lunch with her and to report for duty at the store by 1 o'clock. She was driving on Chestnut Avenue; when she approached Tulare Street where there was a stop sign, a Chrysler automobile, in which plaintiff was seated, was headed north but at a standstill. The defendant driver stopped her own car approximately four feet behind the Chrysler. It was a clear day, the sun was out, but the wind was blowing rather strongly. A whirlwind of small dimensions started up some 35 feet away from the defendant's car. At that time, her window was down. She had her right foot on the brake, and the motor was idling. She originally had no idea that the whirlwind would reach the car, but it did suddenly, and it blew sand into her face and eyes so that she was blinded and her foot slipped off the brake. She tried to wind up the window with incomplete success. When her foot slipped from the brake, it might have hit the gas pedal; she was not sure. In any event, her car struck the automobile in which the plaintiff was seated. The defendant testified on cross-examination, in part, as follows:

"Q. And what part of your car did the whirlwind hit? A. It hit right through the window.

"Q. Came right through the window? A. Yes.

"Q. Did it pass through your car? A. Yes. It hit me in the face and I ducked.

"Q. And it went right through your car? A. Yes.

"Q. And went out the other side? A. I don't remember. I don't know.

"Q. And were you covered by dust? A. Yes, I was. I had dust and sand in my face and my eyes.

"Q. At the time it struck you, you were looking out towards it coming to you; is that correct? A. I was looking like this (indicating), like that.

"Q. And when did you try to roll up your window? A. Right as it hit me.

"Q. In other words, as it was striking you in the face, you were trying to roll up your window? A. Yes.

"Q. In other words, this was happening simultaneously? A. Yes.

"Q. Did you get your window up?

" . . . . . . . . . . . .

"A. About—almost all the way, I guess. Little over half way."

The jury was unquestionably of the opinion that this unusual situation was one which did not involve negligence on the part of the defendant driver.

Appellant relies strongly upon the opinion in *Gray* v. *Brinkerhoff*, 41 Cal.2d 180 [258 P.2d 834]. In the *Gray* case, plaintiff was injured as she was crossing a street in the crosswalk by a truck making a left turn into the crosswalk, and the court said at pages 183 and 184: "Whether or not defendant was guilty of negligence [citations] or plaintiff was guilty of contributory negligence [citations] is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented. [Citations.]

"It is our view that defendant's own testimony shows indubitably that he was guilty of negligence proximately causing plaintiff's injuries. By the provisions of section 560, subdivision (a), of the Vehicle Code, 'The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk. . . .' It is undisputed that defendant did not yield the right of way to plaintiff. Such failure constitutes a violation of the statute and negligence as a matter of law in the absence of reasonable explanation for defendant's conduct. [Citations.]"

The facts in the present litigation are by no means identical; and we cannot say that the jury did not have the right in this case to find an absence of negligence on the part of the defendant driver.

As pointed out by Mr. Chief Justice Traynor in a somewhat similar case, the determination of what constitutes ordinary care "is usually a question for the jury." (*Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210, 215 [331 P.2d 617].)

This court cannot reweigh the evidence (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]). Even in those instances where a moving vehicle collides with another car ahead of it, which is proceeding in the same direction, and an inference of negligence arises in the absence of explanation for the collision, it is held that whether the driver in the rear was negligent in colliding with the vehicle in front is essen-

tially a question for the jury and depends upon the circumstances surrounding the accident. (See *Getas* v. *Hook,* 236 Cal.App.2d 705, 715 [46 Cal.Rptr. 249]; *Larson* v. *Solbakken,* 221 Cal.App.2d 410, 424 [34 Cal.Rptr. 450]; *Kramer* v. *Barnes,* 212 Cal.App.2d 440, 447-448 [27 Cal.Rptr. 895]; *Davis* v. *Ewen,* 148 Cal.App.2d 410, 413-414 [306 P.2d 908]; *Leighton* v. *Dodge,* 236 Cal.App.2d 54, 57 [45 Cal.Rptr. 820]; 2 Harper and James, The Law of Torts, p. 963 et seq; 42 A.L.R.2d 13-338; 73 A.L.R. 1020.)

The jurors found that there was no negligence on the part of the defendant driver; under the authorities above cited, this was properly within their power; the record presented for appellate review does not show that the evidence was insufficient to support the verdict; in the circumstances, this court cannot disregard the decision of the jury and substitute a different conclusion.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.