[Civ. No. 6666. Fifth Dist. Oct. 13, 1983.]

GLENN HORN, Plaintiff and Appellant, v.
GEORGE OH, Defendant and Respondent.

COUNSEL

Strom, Schrag, Ott & Schindler, James S. Baum and Neil A. Cook for Plaintiff and Appellant.

Marderosian, Smith & Swanson and Michael G. Marderosian for Defendant and Respondent.

OPINION

**CAETON, J.***—On January 15, 1979, appellant Glenn Horn (Horn) filed a complaint for personal injury in the Superior Court of Tulare County, against Dinuba Firestone, Inc. (Firestone), Dana M. Rager (Rager), Sharon L. Camus and George Oh (Oh). The complaint was subsequently dismissed at the request of appellant as to defendants Firestone, Rager, and Sharon L. Camus. Horn appeals from the judgment entered on a ten-to-two jury verdict for respondent Oh.

## THE FACTS

On November 17, 1978, Dana Rager, who worked at the Dinuba Firestone Shell station, received a telephone call from his mother-in-law informing him that his sister-in-law's 1965 Buick station wagon was disabled about six or seven miles from the station. Because he had no employees assisting him at the station at that time, Rager asked George Oh, a long-time friend who owned an auto repair shop next to Dinuba Firestone, to accompany him in Rager's 1955 pickup out to the disabled vehicle. Rager intended to pour water into the radiator of the disabled Buick, which had overheated, and drive the car back to his station. When he arrived and examined the Buick, he and Oh discovered that a water line had burst, and so Rager decided to use the pickup to push the Buick back to the station. Rager's pickup was equipped with a large front bumper with two vertical bars for pushing vehicles, and two tires were placed over the vertical bars so that the tires lay between the truck bumper and the Buick bumper. Both Rager, who had driven the Buick before, and Oh knew that the Buick's power steering and brakes would not be operating with the engine off.

Rager drove the Buick; Oh drove the pickup. After a few miles, the two vehicles entered an "S" curve and Oh braked the pickup and backed off of the Buick. After exiting the "S" curve, Oh eased up behind the Buick and

---

*Assigned by the Chairperson of the Judicial Council.

reestablished contact. The vehicles were moving at about 15 miles per hour at this time. Shortly after the pickup made contact with the Buick, the latter vehicle swerved off to the right. Oh felt a tug as the vehicles separated for the last time, as if the front bumper of the pickup was "hanging up" on the rear bumper of the Buick. Rager was unable to regain control of the Buick and it plunged into an excavation in which Horn was working, severely injuring him.

At trial, portions of the deposition testimony of California Highway Patrol (CHP) Officer Edward Koop were read to the jury. It was Officer Koop's opinion that the pickup driven by Oh had literally pushed the Buick off the road because the trailer hitch ball on the rear bumper of the Buick caught on the tire on the front bumper of the pickup, causing the rear of the Buick to be pushed sideways. Officer Koop based his opinion in part on the 63-foot "centrifugal" skid marks left by the Buick: since the vehicles were not going very fast at the time of the accident, "centrifugal" or sideways skid marks would only have resulted from a sideways pushing of the Buick.

Dr. Robert Liptai, an expert in technical accident reconstruction, testified for appellant at trial. He stated that "power" steering and brakes are really power assisted, meaning power from the engine assists the driver while the engine is running. In older model cars, built in the late 1950's or early 1960's, if the engine is off a person would not be physically able to apply enough force to operate the brakes. Dr. Liptai further testified that when one vehicle pushes another, "side loads" or lateral forces arise between the two vehicles, and that the presence of a trailer hitch ball on the pushed vehicle would greatly accentuate the sideways forces. Dr. Liptai was of the opinion that the pushing of the Buick by the pickup was an unsafe and hazardous operation because (1) the trailer hitch ball and the tires on the bumpers of the involved vehicles increased the lateral forces, (2) the Buick was extremely difficult to control because of the lack of power for the brakes and steering, and (3) the drivers of the two vehicles could not communicate with each other.

## DISCUSSION

*I. Was There Sufficient Evidence to Support the Jury's Verdict for Respondent?*

Appellant contends that there was insufficient evidence to support the jury's verdict for respondent Oh. ■ Where a challenge is made on appeal to the sufficiency of evidence in the trial below, the appellant's burden is a heavy one; he must show that there is no substantial evidence whatsoever to support the findings of the trier of fact. (*Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823, 829

[152 Cal.Rptr. 98].) ■ The reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) ■ The power of the appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Fallon, supra,* at p. 881.) ■ Substantial evidence means evidence which is of ponderable legal significance—evidence which is reasonable in nature, credible and of solid value. (*H. Russell Taylor's Fire Prevention Service, Inc.* v. *Coca Cola Bottling Corp.* (1979) 99 Cal.App.3d 711, 726 [160 Cal.Rptr. 411].) ■ The trier of fact is the sole arbiter of all conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom; is the sole judge of the credibility of the witnesses; may disbelieve them even though they are uncontradicted if there is any rational ground for doing so, one such reason being the interest of the witnesses in the case; and, in the exercise of a sound legal discretion, may draw or refuse to draw inferences reasonably deducible from the evidence. ■ (*Johnson* v. *Pacific Indem. Co.* (1966) 242 Cal.App.2d 878, 880 [52 Cal.Rptr. 76].) " '. . . [T]he appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' (6 Witkin, Cal. Procedure [2d ed. 1971] § 249, at p. 4241.)" (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) ■ The testimony of a single witness, even a party, is sufficient to support a judgment. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)

In the present case, appellant bore the burden of proving negligence: "The party claiming that a person did not exercise a requisite degree of care has the burden of proof on that issue." (Evid. Code, § 521.) ■ By asserting that there was no substantial evidence to support the jury's verdict for respondent, appellant is in fact claiming that he proved negligence as a matter of law, and such is not established unless the only reasonable hypothesis is that negligence existed. (See *Arbaugh* v. *Proctor & Gamble Mfg. Co.* (1978) 80 Cal.App.3d 500, 510 [145 Cal.Rptr. 608].)

■ "Whether or not a defendant is guilty of negligence ordinarily is a mixed question of fact and law; the question may be determined as a matter of law only if reasonable persons following the law can draw but one conclusion from the evidence. [Citations.] Only where no fact is left in doubt and no deduction or inference other than negligence can be drawn by the jury from the evidence can the court say, as a matter of law, that negligence is established; even where the facts are undisputed, if reasonable minds may draw different conclusions upon the question of negligence, the question is

one of fact for the jury. [Citation.]" (*Romo* v. *Southern Pac. Transportation Co.* (1977) 71 Cal.App.3d 909, 915-916 [139 Cal.Rptr. 787].)

In the present case, there is little doubt that respondent Oh owed a duty to appellant to exercise reasonable care and that appellant was damaged. In addition, appellant presented evidence that pushing a vehicle under the circumstances of the case was unsafe and hazardous (Dr. Liptai's testimony). ▮▮▮ While we are not prepared to rule that the pushing of *any* power assist vehicle whose power features are not functioning is negligent as a matter of law, we conclude that under the circumstances of the present case, as the evidence was presented to the jury, the only reasonable hypothesis is that respondent Oh was negligent when he agreed to push the Buick at any appreciable speed with the bumper configuration of the two vehicles as described in the trial testimony. Even if the jury had disregarded the uncontradicted testimony of expert Liptai that the bumper hitch of the Buick and the tires on the push-bumper of the pickup would greatly increase the lateral forces operating in any pushed vehicle situation, and the testimony of CHP Officer Koop that the pickup had literally pushed the Buick off the road,[1] an analysis of the testimony of Rager and of respondent Oh leads inescapably to the conclusion that Oh was negligent.

Both Oh and Rager testified that they were aware that the Buick would have diminished steering and braking capability because the power assist mechanisms would not be functioning. Both testified that shortly after the pickup made contact with the Buick for the last time, the Buick inexplicably swerved to the right and headed off the roadway. Rager initially testified that he would not have begun braking while the Buick was still on the pavement because he would have been struck from behind by the pickup. Rager admitted that the pickup and the Buick were in contact for some short period *after* the Buick swerved to the right and he lost control. Oh testified that he felt the bumpers of the two vehicles hanging up, followed by a tug as they separated for the last time. As Oh applied the brakes of the pickup he noticed that the rear end of the Buick was thrown sideways. It is difficult to conceive of a scenario in which the trailer hitch ball on the Buick and the tires and uprights on the pickup did not figure prominently—the only rational conclusion is that the unusual bumper configuration resulted in the pickup's throwing the rear end of the Buick sideways, causing it to go out of control, exacerbated by the reduced maneuverability brought about by

---

[1]A jury is generally entitled to disregard uncontradicted expert testimony as to matters not exclusively within the expert's knowledge. (*Bennett* v. *Hardy* (1930) 108 Cal.App. 473, 479-480 [291 P. 903]; *Shaver* v. *United Parcel Service* (1928) 90 Cal.App. 764, 774 [266 P. 606].)

the lack of power assist features.[2] The testimony of Liptai and Officer Koop, while not necessary to reach this conclusion, makes it a near certainty.

We are extremely reluctant to overturn a jury verdict reached on an issue which is ordinarily considered a factual one properly within the sound discretion of the factfinder. Under the peculiar circumstances of the present case, based upon the uncontradicted testimony of the percipient lay witnesses who were involved in the accident, the only rational conclusion that can be drawn from the evidence is that it was negligent to push a disabled power assist vehicle when the bumper configurations of both the pushed and the pushing vehicles were such that the likelihood of severe sideways forces being applied to the rear of the pushed vehicle was very great. The accident which resulted in serious injury to appellant was a manifestation of precisely the type of risk which a prudent person would have foreseen when deciding whether to push the disabled vehicle rather than having it towed to a repair location. It must therefore be concluded that respondent Oh was negligent as a matter of law. (*Arbaugh* v. *Procter & Gamble Mfg. Co., supra,* 80 Cal.App.3d at p. 510.)

II. *Did the Trial Court Err in Refusing to Instruct on Negligence Per Se?*

Evidence Code section 669, subdivision (a), provides: "(a) The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation of a public entity;

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

Appellant asserts that the trial court should have instructed the jury as to negligence per se relative to possible violation of Vehicle Code sections

---

[2]Our conclusion that Oh was negligent as a matter of law in agreeing to participate in the pushing of the involved vehicle is not based upon any particular interpretation of Oh's actions in reestablishing contact between the pickup and the Buick after both negotiated the "S" curve—we assume he was acting prudently *at that time*. It is the inevitability of the resulting accident, arising primarily from the configuration of the involved vehicles' bumpers, that rendered Oh's conduct negligent.

21711[3] and 41104.[4] While the question of whether a statute was violated is generally for the jury (see *Rayner* v. *Ramirez* (1958) 159 Cal.App.2d 372, 382 [324 P.2d 83]), it is evident that the subject statutes, involving the *towing* of vehicles, could not have been violated by the pushing activity engaged in by respondent. Since the statutes could not have been violated by respondent, there was no need for the trial court to submit any of the other issues relevant to negligence per se to the jury.

For the reasons outlined in part I of this opinion, the judgment of the trial court is reversed and the cause remanded for retrial on the limited issue of the amount of damages suffered by appellant as the result of respondent Oh's negligence.

Franson, Acting P. J., and Zenovich, J., concurred.

A petition for a rehearing was denied November 8, 1983.

---

[3]Vehicle Code section 21711 provides: "No person shall operate a train of vehicles when any vehicle *being towed* whips or swerves from side to side or fails to follow substantially in the path of the *towing* vehicle." (Italics added.)

[4]Vehicle Code section 41104 provides: "In any case, involving an accident or otherwise, where any rear component of a train of vehicles fails to follow substantially in the path of the *towing* vehicle while moving upon a highway, the vehicle shall be presumed to have been operated in violation of Section 21711." (Italics added.)