# Wakem & McLaughlin, Inc., Appellee, v. Royal Indemnity Company, Appellant.

## Gen. No. 30,660.

1. INSURANCE—*nonliability of insurer under burglary policy limiting coverage to losses where "visible marks" left at place of entry, where access gained by intimidation of watchman.* Where burglars, by intimidating a night watchman, obtained access to insured's place of business without leaving "visible marks of such entry made by the use of tools," etc., no liability therefor attached under a burglary insurance policy expressly limiting its coverage to burglaries wherein such marks were left at the place of entrance, although the burglars who entered insured's premises, to gain access to the property which they took from the premises, broke into locked stock rooms within such premises, and thereby left marks of the character described in the policy.

2. INSURANCE—*outer door to insured's place of business as "public entrance" within terms of burglary policy.* Where the insured occupied the whole of the building in which he carried on his business, and none used the outer door to his place of business except by his permission, such door was not a "public entrance" within the terms of a burglary insurance policy, the coverage of which was expressly limited to losses resulting when burglars, in gaining access to the premises, left "visible marks" thereof at the place of entry, and the policy defined "premises" as excluding "public entrances."

3. INSURANCE—*when insurer not estopped to deny liability under burglary policy for loss not occurring within limitations of coverage.* An insurer against loss by burglary under a policy limiting its coverage to cases wherein burglars, in gaining access to the insured's premises, left "visible marks" at the place of entry, and defined "premises" as excluding "public entrances," was not estopped to deny liability where burglars gained access, without leaving such marks, by intimidating a night watchman, although following a prior similar attempted burglary it did not, upon being notified thereof, cancel the policy or deny liability for any loss that might thereafter be sustained by such a burglary, and made suggestions designed to prevent any recurrence of further attempts.

Appeal by defendant from the Municipal Court of Chicago; the Hon. THEODORE F. EHLER, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925.

Reversed with finding of facts. Opinion filed July 13, 1926. Rehearing denied July 24, 1926.

TENNEY, HARDING, SHERMAN & ROGERS, for appellant; CHARLES F. HARDING, JR., and JOHN E. O'HARA, of counsel.

WILSON, McILVAINE, HALE & TEMPLETON, for appellee; J. F. DAMMANN, JR., of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

This appeal is from a judgment for $7,315.91, in favor of plaintiff, upon a policy of burglary insurance issued by defendant. The policy provides that defendant agrees to indemnify plaintiff:

"For all direct loss * * * from within the premises hereinafter defined, of merchandise, furniture, fixtures and equipment, by burglary committed by any person or persons who shall have made an unlawful entry into such premises, by force and violence, when such premises are not open for business, at the place of which entry there shall be visible marks of such entry made by the use of tools, explosives, electricity or chemicals."

By a later clause in the policy it is provided:

" 'Premises' as used in this policy shall be limited to that portion of the interior of the building designated in the schedule, occupied solely by the insured in conducting his business, but shall exclude: (a) show cases or show windows not opening directly into the interior of the premises; (b) public entrances, halls and stairways."

In the schedule at the end of the policy are the following statements:

"2. The location of the building containing the premises is *225-235 East Illinois Street, Chicago.*

"3. The portion of the building occupied solely by the insured in conducting his business and herein called 'the premises' is *Entire*."

(In these last quotations the words we have italicized are typewritten; the rest are printed.)

The premises mentioned in the policy consist of three buildings, or three sections of one building, divided by solid fire walls with no connecting doors. Each building or section has its separate entrance door leading to a platform running along the front of all the buildings, on a level with the floor of a freight car. Two of the buildings are used as warehouses for the general storage of merchandise; the third is occupied by plaintiff as its office and salesroom and for the storage of its own merchandise. A large part of all these goods came in freight cars and was unloaded and hauled across the platform and into the buildings by men in plaintiff's employ. Plaintiff employed a watchman who, because of the lack of connecting doors, was obliged to walk along the outside platform in order to pass from one building to another. One night in December, 1924, while he was outside of the building, going from one building to another, he was met by burglars who compelled him to open the door to the building in which plaintiff's office and goods were located. He opened the door with his own key and let in the burglars, leaving no visible marks of their entrance into the building. The burglars proceeded to break into a locked stock room on the first floor containing radio equipment, and also into a like room on the second floor. After the burglary, there were visible marks, made by the use of tools, on the doors of both of these inner rooms.

Defendant contends that by the express terms of the policy its liability is limited to the payment of losses occasioned by burglaries in which unlawful entrance to the "premises" of the insured was effected by such force and violence as to leave visible marks thereof

"at the place of entry" made by the use of tools, explosives, electricity or chemicals, and that the burglary proved was not of that character. Plaintiff does not dispute this construction of the policy, but insists that the door through which the burglars entered the building was a "public entrance," which, by the language of the policy, is excluded from the description given in the policy of the "premises" of the insured, and that, therefore, proof of such a forcible entry made by tools into the stock rooms where the goods taken were stored is sufficient to bring the burglary within the terms of the policy of insurance. The trial court evidently agreed with plaintiff's theory, but in this, we think, the court was in error. While the evidence shows that the door through which the burglars were admitted by the watchman is the door through which plaintiff's customers and employees entered its place of business, it was at all times wholly under the control of the plaintiff, and any use of it by the general public was permissive only. The evidence shows that this door leads from plaintiff's office to the outside of the building. The photographs appearing in the transcript show that the word "Office" is on the outside of the door, and the diagram and other evidence showing the arrangement of the first floor show that this door was an entrance to "that part of the interior of the building occupied solely by the insured in conducting his business." The words "public entrances, halls and stairways," as used in the policy, clearly refer to such entrances, halls and stairways, outside of the premises occupied by the insured, as are open to the use of the general public, and are not under the sole control of the insured. The word "public" is used in the policy as the opposite of "private." To illustrate the distinction, a private road or way leading from a public highway into the premises of an abutting owner does not become a public road by being used by mem-

bers of the public with his permission or upon his invitation. In the same sense, the door leading from the street into plaintiff's salesroom and office did not become a public entrance merely because it was used by plaintiff's employees or customers, or others whose use of the same was permissive or invited. We are therefore of the opinion that the door through which the burglars entered the premises of the plaintiff was not a public entrance within the meaning of the provision of the policy issued to the plaintiff.

It appears from the evidence that a Mr. Budweiser had a desk in plaintiff's office, not separated by any partition from the rest of the office, and at this desk Mr. Budweiser conducted what is called the "Bud Collection Agency," which, so far as the evidence shows, consisted of Mr. Budweiser alone, although Mr. Wakem had some sort of an interest in the business. There is nothing in these facts to indicate that plaintiff had in any manner parted with its control of the front door of its office. The fact that Mr. Budweiser with plaintiff's permission may have conducted a collection business from a desk in plaintiff's office is not, of itself, sufficient to convert the entrance to plaintiff's office into a public entrance, as seems to be contended by plaintiff's counsel.

Plaintiff also contends that the defendant is estopped by its own actions from asserting it is not liable. This contention is based upon the facts that a similar burglary was attempted about a month before the successful burglary was accomplished, that plaintiff notified the defendant of the occurrence and that defendant did not promptly cancel the policy or deny liability for any loss that might be thereafter sustained by such a burglary, but made certain suggestions designed to prevent a recurrence of further attempts. We are unable to see anything in these facts to which the principle of estoppel can apply. There was no change in the position of the parties by

reason of anything that was said or done on that occasion. Defendant gained nothing and plaintiff parted with nothing on that account. The contention is without force.

The rule is too well settled to require the citation of authority, that before an insured can recover upon a policy of insurance he must show that the loss claimed is within the terms of the policy. That was not done in this case, and for that reason the judgment must be reversed; and since the case was tried by the court without a jury, a finding of facts will be entered in this court and a judgment entered here for the defendant.

*Reversed with a finding of facts.*

GRIDLEY, P. J., and BARNES, J., concur.

Finding of facts: We find, as ultimate facts, that the person or persons who committed the burglary mentioned in the plaintiff's statement of claim did not leave behind them, at the place where they entered plaintiff's premises, any visible marks of such entry made by the use of tools, explosives, electricity or chemicals, and that the place of such entry was not a public entrance within the meaning of the insurance policy in evidence.